**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **ELIZABETH SANDERS** | § | |
| *Plaintiff,* | § | |
| | § | **CIVIL ACTION NO.** _____ |
| **vs** | § | |
| | § | |
| **RES ICD MANAGEMENT, L.P.** | § | |
| **d/b/a  INTEGRATED PROPERTY** | § | |
| **MANAGEMENT** | § | |
| *Defendant* | § | |

**PLAINTIFF'S  ORIGINAL PETITION**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff, ELIZABETH SANDERS, complaining of the Defendant,

RES ICD Management, L.P., d/b/a Integrated Property Management, and for cause of action

would respectfully show unto the Court and Jury the following:

**I.   PARTIES**

1.      Plaintiff Elizabeth Sanders is a resident of Harris County, Texas.

2.      Defendant RES ICD Management, LP, d/b/a Integrated Property Management (hereinafter

as IPM) is a domestic Limited Partnership for-profit entity registered with the Texas Secretary of

State, and may be served with process herein by its registered agent for service of process, Mr.

Richard E. Simmons, located at 3110 W. Southlake Boulevard, Suite 120, Southlake, Texas 76092.

3.      To the extent that the above named Defendant is conducting business pursuant to a trade

name or assumed name, then suit is hereby brought against them pursuant to the terms and

provisions of Rule 28 of the Texas Rules of Civil Procedure, and Plaintiff hereby demands that upon

answering suit, that Defendant answer in their correct legal name and assumed name.

## II.   JURISDICTION & VENUE

4.      Jurisdiction is proper pursuant to Texas Labor Codes **§**21.051 (as amended). All

jurisdictional prerequisites and conditions precedent, pursuant to TRCP Rule 54, have been met.

Defendant IPM., qualifies as an "employer" under **§**21.002(8)(a) of the Texas Labor Code.

Moreover, the Court has jurisdiction over the Plaintiff's state law-claims of a violation of

§ 21.000 *et seq.* of the Texas Labor Code ("TCHRA") by virtue of 28 U.S.C. § 1367.

5.      Venue is proper in Harris County, Texas because it is the county in which all or a substantial

part of the events or omissions giving rise to the Plaintiff's claims occurred ( Tex. Civ. Prac. & Rem.

Code **§**15. 002(a)(1), and the Defendant IPM,  has it's principal office in the State of Texas, County

of Tarrant - with significant business contacts in the City of Houston, County of Harris. (Tex. Civ.

Prac. Rem. Code **§**15.002(a)(3)).

6.      Venue and Jurisdiction are also proper in this district under 28 U.S.C. § 1391(b) as a

substantial part of the events or omissions giving rise to the claim occurred in this District; as well

as under the Americans with Disabilities Act Amendments Act of 2008, under 42 U.S.C. §12101 *et*

*seq*.; and the Family Medical Leave Act of 1993, pursuant to 29 U.S.C. §2601 *et seq*. Plaintiff further

establishes Jurisdiction via Federal Question, pursuant to U.S. Const. Art. 3, §2; 28 U.S.C. §1331.

## III.   EXHAUSTION OF ADMINISTRATIVE REMEDY

7.      Ms. Sanders exhausted her administrative remedies pursuant to the requirements of 42 U.S.C.

§ 2000e *et seq*, and has taken all steps necessary to bring the causes of action made the subject of

this litigation.

8.      On or about **July 19ᵗʰ, 2018**, Ms. Sanders filed her FORM 5 Charge of Discrimination with

the Equal Employment Opportunity Commission. [ **Plaintiff's Exhibit A** ]   Designated by Charge

Number 460-2018-04537, the charge clearly outlines a claim for Retaliation regarding the Plaintiff's

placement on protected leave under the Family Medical Leave Act (FMLA), and Discrimination

against her disability, as designated by the Americans with Disabilities Act.

9.      Regarding this first requirement, Ms. Sanders' Charge filed on **July 19th, 2018**, means that any adverse action occurring within three hundred (300) days before that date ( i.e. back to **September 22nd, 2017** ) is actionable under Title VII.

10.     On or about **February 13th, 2020**, Ms. Sanders received a Dismissal and Notice of Rights Letter [ **Plaintiff's Exhibit B** ] issued by the Equal Employment Opportunity Commission.  This letter qualifies Ms. Sanders' right to initiate litigation, giving an operational window of ninety (90) days from the above date.  Statute of Limitations closes on or about **May 13th, 2020.**  Plaintiff therefore files her Original Complaint prior to this date in order to maintain her cause(s) of action.

## IV.    ALLEGATION OF FACTS

11.     Ms. Sanders began her employment with Integrated Property Management (IPM) sometime in mid April, 2014.  Ms. Sanders was hired as an assistant Property Manager, and promoted to Property Manager, and ultimately promoted a 2nd time into the position of Manager over a larger property.  Ms. Sanders maintained that same position until her separation from IPM.

12.     On or about June 7th, 2017, Ms. Sanders discovered that previously diagnosed cancer had returned and metastasized into Stage 4 Breast Cancer, with metastasis to the bone.

13.     On or about June 16th, 2017, Ms. Sanders ran into email exchanges with a supervisors which indicated that IPM would not be accommodating or tolerant of her medical concerns and requirements.  Mr. Rory Johnson, of IPM, indicated that he preferred that no one work from home.  However, exceptions were made for other IPM employees including Deanna Johnson (his wife) an IPM Compliance Officer, and other employees including the Director of Compliance, and a Regional Manager - allowing all of these individuals to work from home at their discretion.

14.     Moreover, despite being made aware of Ms. Sanders' cancer and the requirement for protected time off for medical examinations and procedures, Ms. Sanders was forced to use her Paid

Time Off (PTO) for medical purposes. This forced use occurred on June 21st, 22nd, 23rd, and 29th, of 2017; and again on July 6th, 13th, and 28th, 2017.

15.     This particular pattern of behavior by IPM continued for the remainder of Ms. Sanders' employment with them.  Case in point, while Ms. Sanders was on FMLA leave for a cancer related surgery, IPM called her no less than one hundred and fifty five (155) times in a one week period. Contact and requests to work via email or telephonically continued from October 2017 through May of 2018, during Ms. Sanders' intermittent FMLA leave.

16.     Throughout November and December of 2017, IPM's computer network was incapacitated. As a work around, Ms. Sanders was allowed to work from home and use her personal laptop

17.     On or about January 30th, 2018, in contravention to prior procedure and protocol, IPM informed Ms. Sanders that in order to renew her "handicap placard" for her vehicle and parking, she would be required to give the company thirty (30) days notice and receive corporate approval.

18.     In March of 2018, Ms. Sanders continued to encounter difficulties with her employer allowing her FMLA leave,  forcing her to utilize PTO while on FMLA leave.

19.     On or about March 30th, 2018, Ms. Sanders requested an accommodation for her disability from IPM,  in order to alleviate the strain that constant FMLA interference was imposing on her employment.  No response or acknowledgment was issued by IPM for the following calendar month.

20.     In April, 2018, Ms. Sanders again emailed IPM regarding requests for reasonable accommodation – again, to no avail.

21.     It should be noted that IPM did not respond, engage in a meaningful dialogue, or approve of the accommodation(s) requested on March 30th, 2018, until May 2nd, 2018 – one month later. No doubt a delay meant to induce her resignation.

22.     However, on May 3rd, 2018, IPM unilaterally altered the employment structure for salaried employees on intermittent FMLA leave, knowing that the Plaintiff was, at that point in time, on FMLA leave.

23.     On or about May 21ˢᵗ, 2018, Ms. Sanders sent a lengthy email to the IPM Human Resources Director, Ms. Amber Hartsfeld, and included the IPM Owner, Mr. Kenneth Fambro in the correspondence.  This communication clearly outlined Ms. Sanders' concerns about her treatment and the status of her employment.

24.     On or about May 23ʳᵈ, 2018, Ms. Sanders was asked to clarify and further elaborate on certain issues outlined in her email correspondence, and prior correspondence, submitted to IPM management, regarding inappropriate off-handed comments made by an area manager.

25.     On or about May 25ᵗʰ, 2018, Ms. Sanders engaged in protected activity, and sent Mr. Fambro and Ms. Hartsfeld an additional four (4) page email further detailing her concerns regarding (i) a hostile work environment, (ii) discrimination, and (iii) retaliation.

26.     On or about May 30ᵗʰ, 2018, Ms. Sanders was terminated from employment with IPM, a mere five (5) days after her last complaining correspondence to IPM management.

27.     When Ms. Sanders questioned the reason for her termination, IPM insisted that Ms. Sanders had been emailing proprietary information, including financial information, to herself.

28.     Ms. Sanders allowed IPM's third party technical firm, High Wire, complete and unfettered access to her personal email and computers, in exchange for additional time for her to move out of her company-supplied habitation.  The allegations of misappropriation were never substantiated. No proof of the above allegation was ever discovered by High Wire or IPM.

29.     However, IPM did see fit to change the reason for termination to include approaching a vendor, Fire Pro Tech, LLC, for tickets to a sporting event – a practice common among businesses, and one regularly indulged in by almost all employees of IPM.  It should be noted that Ms. Sanders was not the manager who authorized the vendor's contract with IPM.  This practice is common in the apartment industry.

30.     Ms. Sanders' treatment is not an isolated incident, but a pattern of behavior for IPM.  On personal information and knowledge, Ms. April Roy, another Manager from IPM suffering from cancer was also denied protected leave to address her medical treatments – working up to, and including, the day she died, because she could not afford to take time off and did not have any more PTO hours to spend under IPM's allocation.

## V.     CAUSES OF ACTION

### [A]     RETALIATION UNDER THE FAMILY MEDICAL LEAVE ACT

31.     Plaintiff adopts the factual allegations herein above as stated *in haec verba*.

32.     To establish a *prima facie* case of retaliation, the Plaintiff must show (1) that they exercised or attempted to exercise rights afforded by the FMLA; (2) they suffered an adverse employment action; and (3) the adverse employment action had a causal connection to the protected activity. [ Unquestionably, termination is the ultimate adverse employment action. And extreme temporal proximity between the request or incident giving rise to FMLA use, as well as shifting reasons for termination, functions as an immutable causal nexus. ]

33.     As Ms. Sanders already qualified for FMLA eligibility based on the duration of her employment with the Defendant, the only point remaining in dispute is whether the Plaintiff's termination was causally connected FMLA leave.

34.     Defendant has asserted that the Plaintiff was terminated for two separate reasons. The first reason was the alleged misappropriation of confidential financial information.  The second reason was for ostensibly breaking with company policy and approaching a vendor associated with the Defendant regarding tickets to a sports event.

35.     However, review of the Plaintiff's performance, and the total dearth of any documentation regarding the Defendant's purported concerns regarding either misappropriation of trade secrets or breach of company policy, has created an inference of pretext too broad to ignore.

37.     Finally, the Defendant's concerns with the Plaintiff's employment began in earnest contemporaneously with the diagnosis of her relapse of breast cancer and need for a second round of treatment.

**[B]     INTERFERENCE OF THE FAMILY MEDICAL LEAVE ACT of 1993, PURSUANT TO 29 U.S.C. § 2601 *et seq*.**

38.     Any violation of the FMLA or its regulations constitutes interference.

39.     29 C.F.R. § 825.220(b).  An ***entitlement*** claim is a subset of interference claims under which "an employee claims the denial of a benefit to which he is entitled under statute." *Bosley v. Cargill Meat Solutions Corp*., 705 F.3d 777, 780 (8th Cir. 2013) (quoting *Pulczinski v. Trinity Structural Towers, Inc*., 691 F.3d 996, 1005 (8th Cir. 2012).

40.     To prevail on an entitlement claim, a Plaintiff must establish that they were (i) eligible for FMLA coverage, and that they (ii) gave notice to their [former] employer of their impending need for FMLA leave, or cause to engage in the dialogue thereof.

41.     Plaintiff adopts the factual allegations herein above as stated *in haec verba*.

42.     To establish a *prima facie* case of FMLA Interference, a Plaintiff must show: (1) that she is an 'eligible employee'; (2) the defendant is an 'employer'; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of his intention to take leave; and (5) the employer denied the employee FMLA benefits to which he was entitled." *Cavin* v. *Hond Mfg*., 346 F.3d 713, 719 (6th Cir. 2003).

43.     Ms. Sanders has established a *prima facie* instance of Interference by the Defendant in that: (1) Ms. Sanders was an eligible employee at the time of incident pursuant to the definitions and tenants of the Family Medical Leave Act of 1993 as outlined in 29 U.S.C. §2601 *et seq*.[1]; (2) the

---

[1] Plaintiff suffers from a 'serious health condition'; defined by the FMLA as an illness, injury, or impairment, or physical or mental condition that involves either (i) inpatient care in a hospital, hospice, or residential medical care facility; or (ii) continuing treatment by a health care provider. 29 U.S.C.§§ 2601, 2611(11); see also 29 C.F.R.§ 825.114.

Defendant, IPM, is an 'employer', pursuant to the above qualifications met in the Jurisdiction and Venue necessities of this cause of action; (3) Ms. Sanders was entitled leave pursuant to the FMLA at the time of incident, and was still on FMLA leave when IPM altered its policies and procedures for salaried employees on FMLA leave; (4) Ms. Sanders gave the Defendant proper notice [2] for each individual instance of his intention to take medical leave; and (5) the Defendant denied Ms. Sanders the FMLA benefits to which she was entitled. *Id.*

44.     This fifth and final element was exacted by IPM: (i) refusing to issue FMLA leave for an eligible employee, (ii) actively discouraging an eligible employee from using FMLA leave by forcing her to use his accrued Time Off (whether paid or unpaid); (iii) and actively manipulating Ms. Sanders' work hours, as well as IPM's own internal policies and procedures, to avoid responsibilities under the FMLA, as well as other prohibitions pursuant to Sections 105 and 825.220 of the FMLA.[3]

45.     In order to establish a Willful violation of the Family Medical Leave Act, a Plaintiff must show that "the employer either knew or showed reckless disregard of the matter of whether its conduct was prohibited by the statute." *Hillstrom* v. *Best Western TLC Hotel*, 354 F.3d 27, 33 (1st Cir. 2003); see also *Porter* v. *New York Univ. Sch. Of Law*, 392 F.3d 530, 531-32 (2d Cir. 2004); *Hanger* v. *Lake Cty.*, 390 F.3d 579, 583 (8th Cir. 2004).

46.     Plaintiff would show that she provided proper, and detailed, notice to the Defendant during every instance of a medically based request for leave; the balance of which may be found in emails exchanged between the Plaintiff and the Defendant.[4]

---

[2] Once an employer becomes aware than an employee's need for leave is for a reason that *may* qualify under the FMLA, the employer *must* notify the employee if her or she is eligible for FMLA leave and, if eligible, must also provide a notice of rights and responsibilities under the FMLA.  If the employee is not eligible, the employer *must* provide a reason for ineligibility.(emphasis added) [Department of Labor form WH-1420] Plaintiff would argue that retina surgery treating a Type I Diabetes related ailment would qualify under the definitions of 29 U.S.C. §2601 *et seq*.

[3] See Department of Labor Family Medical Leave Act fact sheet #77B.

[4] "[A]n employee gives his employer sufficient notice that he is requesting leave for an FMLA-qualifying condition when he gives the employer enough information for the employer to reasonably

47.     By requesting that the Plaintiff utilize his/her personal leave, paid time off, and holidays to

cover his/her medical leave – as opposed to consistently failing to collect information and issuing

an FMLA qualification determination over two dozen instances of leave – Plaintiff would show that

the Defendant did either act with knowledge, or exhibit reckless disregard, of conduct prohibited by

statute, thus interfering with Plaintiff's employment rights and benefits under the FMLA. *Id.*

48.     Section 105 of the FMLA and section 825.220 of the FMLA regulations prohibit the

following actions:

> *An employer is prohibited from interfering with, restraining, or denying the exercise of, or the attempt to exercise, any FMLA right.  Examples of prohibited conduct include: (i) Refusing to authorize FMLA leave for an eligible employee, (ii) Discouraging an employee from using FMLA leave,  (iii) Manipulating an employee's work hours to avoid responsibilities under the FMLA, (iv) Using an employee's request for or use of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions, or, (v) Counting FMLA leave under "no fault" attendance policies. Id.*

49.     The above list by no means exhaustive.  Further, any violations of the FMLA similar to those

outlined above, or the Department's regulations, constitute interfering with, restraining, or denying

the exercise of rights provided by the FMLA.

50.     Interference is distinctly shown by the Plaintiff's allegations that IPM instructed her to

obfuscate and utilize her Paid Time Off, and/or other sick leave, in the place of qualified FMLA

leave.

## [C]     DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT OF 2008

---

conclude that an event described in FMLA 2613(a)(1) has occurred." *Hammon* v. *DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir. 1999); see also *Price* v. *City of Fort Wayne*, 117 F.3d 1022, 1025-26 (7th Cir. 1997); *Manuel* v. *Westlake Polymers Corp*., 66 F.3d 758, 763 (5th Cir. 1995)( invoking FMLA by name is not necessary ).  See also *Chandler* v. *Specialty Tires of Am (Tennessee), Inc*., 283 F.3d 818, 825 (CA 6 2002)

(1)     **DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT OF 2008, AS AMENDED, PURSUANT TO 42 U.S.C. CH. 126 § 12101 *et seq.***

51.     Plaintiff adopts the factual allegations herein above as stated *in haec verba*.

52.     In order to establish a *prima facie* claim for discrimination under the ADAAA it must be demonstrated that the employee: (1) is disabled as defined under the ADAAA; (2) is qualified to perform the essential functions of the position occupied or the position sought, with or without a reasonable accommodation; and (3) that the circumstance suggest that the employee was subjected to an adverse employment action based on that disability. *Hagood* v. *Cty. of El Paso*, 408 S.W.3d 515, 523 (Tex. App.—El Paso 2013, no pet.); *EEOC* v. *LHC Group, Inc.*, 773 F.3d 688 (5th Cir. 2014). See also *Walton* v. *U.S. Marshal Service*, 492 F.3d 998 (9th Cir. 2007); *Wilking* v. *County of Ramsey*, 153 F.3d 869 (8th Cir. 1998).

53.     It is Ms. Sanders' contention that pursuant to the ADAAA, she has established a *prima facie* case of discrimination under those selfsame acts. In satisfaction of the requisite elements outlined in 42 U.S.C. § 12112, *et seq*. & 29 C.F.R. § 1630, *et seq*. Ms. Sanders would show that she: (1) was an employee with a known disability [ Cancer ] pursuant to the ADAAA; (2) was qualified for the position in question and completely able to perform its essential functions with reasonable accommodation [ alterations in scheduling, ability to work from home, limited contact with residents due to immunological compromise, etc. ]; and (3) that circumstances overwhelmingly suggest that she was subject to adverse employment actions [ termination, etc. ] based on that disability. *Id.*

54.     Plaintiff will reiterate in an Assertion of Pretext below: (i) her performance was never in doubt – indeed, she had qualified for multiple promotions during the tenure of her employment with the Defendant; (ii) the Defendant ostensibly terminated Ms. Sanders for dubious, and ultimately erroneous reasons; and, (iii) the Defendant altered its FMLA protocols and procedures while the Plaintiff was on FMLA leave.

**(2)    DISABILITY DISCRIMINATION UNDER CHAPTER 21 *et seq* OF THE TEXAS LABOR CODE *in the alternative***

55.    Plaintiff adopts the factual allegations herein above as stated *in haec verba*.

56.    Under the Texas Commission on Human Rights Act, as codified in Chapter 21 of the Texas Labor Code, "an unlawful employment practice is established when the complainant demonstrates that... disability was a *motivating factor* for an employment practice, even if other factors also motivated the practice." Tex. Labor Code § 21.125 (emphasis added) [5]

57.    Plaintiff would show that, pursuant to §21.051 *et seq* of the Texas Labor Code, she was in fact, (i) not allowed to work from home; (ii) deprived of the benefits of her employment; (iii) adversely affected; and ultimately (iv) discharged, and would reference her disability as a motivating factor in those adverse employment actions and discharge. *Id.* [6]

**[D]    FAILURE TO ACCOMMODATE**

**(1)    FAILURE TO PROVIDE REASONABLE ACCOMMODATION PURSUANT TO 42 U.S.C. § 12182 *et seq.*,**

58.    Plaintiff adopts the factual allegations herein above as stated *in haec verba*.

59.    In order to establish a *prima facie* instant Failure to Provide Reasonable Accommodation by an employer within the 5th circuit, the Plaintiff must provide four elements; (1) The employee in question has a disability as defined by the ADAAA, (2) the employee informed the employer of her condition and requested an accommodation, (3) there was an accommodation available that would have been effective, and would not have imposed undue hardship on the employer, and (4) that failure to provide accommodations and engage in an interactive process resulted in an adverse

---

[5]Amending the original "because of" threshold, replacing it with a mere "motivating factor" burden of proof. *See* Tex. Lab. Code **Sec. 21.125.** 'CLARIFYING PROHIBITION AGAINST IPMERMISSIBLE CONSIDERATION OF RACE, COLOR, SEX, NATIONAL ORIGIN, RELIGION, AGE, OR *DISABILITY* IN EMPLOYMENT PRACTICES'

[6]Due to the dearth of Texas case law interpreting the *TCHRA*, the Texas Supreme Court has directed Texas courts to seek guidance from federal interpretations of Title VII when construing the *TCHRA*. See   *Speer* v. *Presbyterian Children's Home & Serv. Agency,* 847 S.W.2d 227, 232 (Tex. 1993).

employment action against the employee in question. See also *Allen* v. *Pacific Bell*, 348 F.3d 1113

(9th Cir. 2003).

60.     It is Ms. Sanders' contention that IPM has failed to provide her reasonable accommodation

on multiple occasions, by denying them outright; failing to address or acknowledge the issue all

together; withdrawing previously issued reasonable accommodations; or failing to even

communicate with the Plaintiff.

61.     Ms. Sanders meets these accommodation requirements in that: (1) Ms. Sanders has a

disability as defined under 42 U.S.C. § 12112; (2) Ms. Sanders informed IPM of her condition at the

outset of her diagnosis, and continuously reminded her employer of this condition *vis a vis* her

almost constant emails and phone calls to her supervisors and managers regarding her medical status

as well as the impending need for surgeries, including her request(s) for accommodation(s), both

formal and informal; (3) there were multiple reasonable accommodations available that would have

been effective in assisting Ms. Sanders – none of which would have placed an undue hardship on

the IPM; and (4) the IPM fundamentally failed to provide  accommodations, or provided and

subsequently withdrew them, and indeed unquestionably failed to engage in the requisite interactive

process necessary to provide such accommodations on more than one.

62.     This argument is crystalized by IPM failing to communicate with Ms. Sanders for a calendar

month, halting the requisite interactive process in its tracks, without offer or consideration of any

other avenue of accommodation.

      **(2)     FAILURE TO ACCOMMODATE UNDER CHAPTER 21 OF THE TEXAS
              LABOR CODE** *in the alternative*

63.     Plaintiff adopts the factual allegations herein above as stated *in haec verba*.

64.     For a plaintiff to show discrimination based on the denial of a reasonable

accommodation in Texas, the plaintiff must show: (1) that she is an individual who has a

disability within the meaning of the ADA/ADAAA; (2) that an employer covered by the

statute had notice of her disability; (3) that with reasonable accommodations she could perform the essential functions of the position; and (4) that the employer has refused to make such accommodations. *Davis* v. *Cty. Of Grapevine*, 188 S.W.3d 758 (Tex. App.—Fort Worth 2006, pet. denied)

65.     Pursuant to the *Davis* ruling, Ms. Sanders has shown that: (1) she has a disability within the tenants of the Americans with Disabilities Act, as amended; (2) her employer, by and through her numerous emails and communiques with her managers, had unquestionable knowledge and notice of her disability; (3) that with reasonable accommodations to her work environment and/or work schedule, she could perform the essential functions of her position; and, (4) that IPM refused to make such accommodations, withdrew certain accommodations, and refused to engage in the interactive process to determine mutually acceptable accommodations. *Id.*

66.     By and through the above factual allegations, it is clear that Ms. Sanders's termination was motivated by her disability, both perceived and factual, and that there was an absolute and fundamental breakdown in IPM's interactive processes, resulting in a total failure and rejection to accommodate Ms. Sanders, despite her obvious need and multiple requests for such accommodation resulting, instead, in adverse employment actions, and her termination under false pretense.

## VII.   INFERENCE OF PRETEXT

67.     Plaintiff alleges that the proffered reasons for her termination are both erroneous and pretextual.   Alternatively,   any legitimate non-discriminatory reason given by the Defendant (however unsubstantiated) was secondary to the motivating factor of her protected disability status *vis-a-vis* her cancer.

68.     In the absence of direct evidence of discrimination, Section 1981 and Title VII causes of action, including Americans with Disabilities Act cases, are governed by the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007); *Shackelford v. Deloitte & Touche, LLP*, 190

F.3d 398, 403 n.2 (5th Cir. 1999) (noting that Section 1981 claims and Title VII claims use the same burdens of proof and analysis).

69.     First, the plaintiff must establish a *prima facie* case of discrimination, "which requires a showing that the plaintiff (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy*, 492 F.3d at 556; *Caldwell v. Univ. of Houston Sys.*, 520 Fed. Appx. 289, 293 (5th Cir. 2013); *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 425 (5th Cir. 2000).

70.     Second, if the plaintiff makes a *prima facie* showing, the employer must then provide a legitimate, non-discriminatory reason for the employment action. *Byers*, 209 F.3d at 425. "The burden on the employer at this stage is one of production, not persuasion; it can involve no credibility assessment." *Alvarado v . Tex. Rangers*, 492 F.3d 605, 611 ( 5th Cir. 2007)(quotations and citation  omitted).

71.     Finally, if the employer provides a legitimate, non-discriminatory reason, "the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Id*. (citation omitted). "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 249 (1981)).

## VIII.    DAMAGES

72.      Plaintiff would show that she has attempted to mitigate damages by and through (i) her

request for unemployment benefits to the Texas Workforce Commission, and/or (ii) her attempted

acquisition of full-time employment since the date of her termination, with a salary equivalent or

similar to the pay provided in his contract for employment with IPM.

73.      Plaintiff would seek (i) all paid time off and holiday pay she was forced to use during her

medical leave, (ii) unpaid overtime, (iii) bonuses, and (iv) commissions; as well as

(v) all wages lost or unpaid when she was forced to work during her medical leave, (vi) with interest

on same calculated at the prevailing rate, (vii) as well as liquidated damage reflecting said wages

combined with interest; (viii) back pay, and front pay.

74.      Along with any and all other damages which may be awarded by a court of competent

jurisdiction, Plaintiff also seeks Compensatory and Punitive Damages under  §21.2585(d)(4)

of the Texas Labor Code, which indicate a $300,000.00 maximum per each *intentional* violation of

her civil rights & liberties under same.[7]

75.      Plaintiff would show satisfaction of the element of Intent by and through (i) an overall refusal

by IPM's management and executive management staff to interact with her and find mutually

amenable accommodations; and, (ii) IPM's *malice* and/or *reckless indifference* to Ms. Sanders's

rights, embodied in IPM's refusal to allow her to work from home, it's refusal to engage in dialogue

with Ms. Sander regarding a work schedule accommodation[8], and IPM's intentional alteration of

company FMLA policy while Ms. Sanders was on protected medical leave, effectively shuttering the

---

[7] Where an employer is found to have engaged in *intentional* discrimination on the basis of an individual's disability, it can be held liable for Compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, as well as punitive damages. (emphasis added) 42 U.S.C. §1981a(a)(2), (b)  –  in the alternative.

[8] Examples of reasonable accommodations provided in the ADA include acquisition or modification of equipment or devices, job restructuring, and part-time or *modified work schedules*. (emphasis added) 42 U.S.C.  § 12111(9)(B).

accommodations dialogue and process entirely.[9]

76.      Plaintiff also seeks Attorney fees and costs, including a reasonable attorney's fee, reasonable

expert witness fees, and other costs of the action to be paid by the defendant. 29 U.S.C. § 2617(a)(3).

77.      An award of Liquidated Damages is "the norm under the FMLA." *Nero v. Industrial Molding*

*Corp.*, 167 F.3d 921, 929 (5th Cir. 1999).  See also *Thom v. American Standard, Inc.*, 666 F.3d 968,

977-78 (6th Cir. 2012)(reversing district court's refusal to award liquidated damages to Plaintiff in

an FMLA case, and noting that there is a "strong presumption under the statute in favor of

doubling.")

## IX. ATTORNEYS FEES

78.      Plaintiff is justified in requesting attorney's fees in prosecuting this action under

 Chapter 21 of the Texas Labor Code, §21.259(a), as well as 42 U.S.C. §12205, and

29 U.S.C. § 2617(a)(3) should the Plaintiff prevail in this action.

## X. REQUEST FOR JURY

79.      Plaintiff demands a trial by jury on all issues.

## XI.  PRAYER FOR RELIEF

80.      WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant  be cited to

appear and answer, and that on final trial Plaintiff be granted relief as follows:

    1) Judgment against Defendant in excess of the minimum jurisdictional limits of this court,

    Back Pay, and Front pay;

    2) Judgment directing the Defendants to pay Plaintiff actual, Compensatory, and Punitive

     damages on all counts, whether statutory or at common law, cost of suit and attorneys fees,

    including Liquidated Damages, in the amount of **$300,000.00**; and

---

[9]  See Tex. Lab. Code § 21.2585(B) (b) "A complainant may recover Punitive Damages against a respondent ... if the complainant demonstrates that the respondent engaged in a discriminatory practice with *malice* or with *Reckless Indifference* to the state-protected rights of an aggrieved individual."

3) Such other and further relief as Plaintiff may be justly entitled by law.

Respectfully Submitted,

_/s/ Julian Frachtman_

H. Julian Frachtman
TBN No.              24087536
SD TX No.            2695031
3100 Richmond, Suite 203
Houston, Texas 77098
tel. 832-499-0611
fax. 713-651-0819
Hfrachtmanlaw@gmail.com
ATTORNEY FOR PLAINTIFF
ELIZABETH SANDERS